UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 23-24130-CIV-MORENO

VALERIA ALVAREZ,

    Plaintiff,

vs.

UNITED STATES OF AMERICA,

    Defendant.
_____/

## ORDER DENYING MOTION TO DISMISS AND SETTING ANSWER DEADLINE

This is a one-count negligence claim by Ms. Alvarez against the United States regarding an alleged sexual assault perpetrated on her by Officer Ryan Seaman in the Federal Detention Center in Miami. The government moves to dismiss the complaint filed under the Federal Tort Claims Act, relying on the discretionary function exception, failure to state a cause of action, and lack of subject matter jurisdiction. For the reasons that follow, the Court denies the motion.

### I. Background

Ms. Alvarez is a female federal inmate remanded into the custody of the Federal Bureau of Prisons, where she was transferred to the Federal Detention Center in Miami, Florida. Officer Seaman was employed by the Federal Bureau of Prisons as a correctional officer working at the Federal Detention Center in Miami.

In Ms. Alvarez's words, the Bureau of Prisons has created and maintained a "sanctuary" for male correctional officers to sexually assault and abuse female inmates. In her view, the sexual abuse of female prisoners under Bureau of Prisons control is "rampant" but goes largely unchecked

as a result of "cultural tolerance, orchestrated cover-ups and organizational reprisals of inmates who dare to complain or report sexual abuse."

The Prison Rape Elimination Act mandates that the Bureau of Prisons conduct annual audits at each federal prison facility. Ms. Alvarez alleges that the auditors "failed to interview any female inmates that were involved in or witnesses to [Prison Rape Elimination Act] violations and that the audits for the Federal Detention Center in Miami are "materially" incomplete.

The Plaintiff claims that Officer Seaman is a known sexual predator to the Federal Detention Center of Miami's Management Team and the Prison Investigative Agencies. Per Ms. Alvarez, Officer Seaman had been investigated on numerous occasions for sex crimes against female inmates. Female inmates were reluctant to come forward with information on sexual abuse "for fear of reprisal, including, but not limited to, transfer to a different facility, disciplinary segregation, loss of early release rights, detrimental write-ups, loss of work privileges, and interference with vocational skills programs." The Federal Detention Center in Miami has a policy whereby inmates complaining of mistreatment by prison officials are removed to a local county detention center or a special housing unit, which has purportedly suppressed complaints of misconduct as the county facilities do not permit work details or vocational training. Ms. Alvarez alleges that Officer Seaman used his access to personal history files, telephone call recordings, and personal emails, giving him additional leverage to extract sexual favors and threaten the safety of Ms. Alvarez.

In April 2022, Officer Seaman began working in the Alpha West Unit where Ms. Alvarez was located. He began talking with her and bringing her pizza, pineapple, cheese sticks, mac and cheese, and electric cigarettes. By the third week of May 2022, after allegedly making sexually suggestive comments to her, Officer Seaman ordered Ms. Alvarez to follow him to the last cell on

the top tier of Alpha West and informed her it was time for her to "pay him back" for all of the goods he had brought her. He then proceeded to have sexual intercourse with her without the use of a condom. Two days later, he brought her the "morning after" pill and instructed her to swallow the pill in front of him.

On May 25, 2022, Officer Seaman coerced Ms. Alvarez into having sex a second time. This time, he used a condom and placed the condom back in his pocket after sex, claiming to be concerned about flushing it down the toilet. Officer Seaman instructed Ms. Alvarez not to tell anyone so that they would not be in trouble. A few days later, Ms. Alvarez was placed in the Special Housing Unit and interrogated by investigators until she confessed to being the victim of rapes. The investigators' report was disclosed to other staff members, and Ms. Alvarez was the subject of "ridicule, gossip and harassment" from staff and inmates alike. Ms. Alvarez says that she did not consent or give permission to Officer Seaman to touch her or engage in any sexual activity.

## II. Claims

Ms. Alvarez's one-count claim is for negligence. She argues that the Federal Detention Center of Miami's Management Team and Prison Investigative Agencies owed her a duty to "protect public safety by ensuring that federal officers serve their sentences of imprisonment in facilities that are *safe, humane*, cost efficient and appropriately *secure*" as mandated by the Bureau of Prisons. (quoting FEDERAL BUREAU OF PRISONS, https://www.bop.gov/about/agency/ (last visited June 11, 2024)). In her view, the Bureau breached its duties by "negligently supervising, managing and retaining Officer Seaman during her incarceration." Additionally, by providing Officer Seaman with unrestricted and unsupervised one-on-one access to her while incarcerated, despite knowledge of his past sexual abuse and harassment of female inmates, she argues that the

3

Federal Department of Corrections Management Team breached their duties. Furthermore, in her view, they breached their duties by creating a system where victims of sexual abuse and harassment are punished for reporting the sexual misconduct of prison staff by transfer to more secure facilities, removal from educational and vocational programs, placement in special housing units, loss of early release rights, detrimental write-ups, and loss of work privileges. Ms. Alvarez delineates more specific allegations of breaches under the Prison Rape Elimination Act.

In its Motion to Dismiss, the Defendant argues that the Court should dismiss the Complaint for failure to state a claim and lack of subject matter jurisdiction because Ms. Alvarez's claims are barred by the discretionary function exception to the Federal Tort Claims Act and that they fail to allege any actionable negligence. In the government's view, the Federal Torts Claim Act does not impose liability on the government for Officer Seaman's alleged criminal acts of "personal gratification." The Bureau of Prisons denies that it knew of any prior misconduct by Officer Seaman and states that it promptly investigated this incident as soon as it found out. Furthermore, Officer Seaman resigned, and the Bureau of Prisons referred the matter to the Office of the Inspector General for investigation, including potential recommendation of criminal penalties against the officer.

### III. Legal Standard

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a *probability* requirement, but it asks for more than a sheer possibility that a defendant has acted

4

unlawfully." *Id.* (emphasis added) (internal quotations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) "can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A "facial attack" on the complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotations omitted)).

By contrast, factual attacks "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (internal quotations omitted)). "[T]he district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (internal quotations omitted). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 412-13. "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* at 413.

The Federal Tort Claims Act ("FTCA") was "designed to provide redress for ordinary torts recognized by state law." *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001). It authorizes subject matter jurisdiction for any claims arising from the following:

> "injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 1346(b)(1). "[U]nless the facts support liability under state law, the district court lacks subject matter jurisdiction to decide an FTCA claim." *Id.*

Nonetheless, the Federal Tort Claims Act is subject to exceptions, such as the discretionary function exception, which precludes government liability for "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If the exception applies, "the FTCA claim must be dismissed for lack of subject matter jurisdiction." 151 F.3d 1338, 1340 (11th Cir. 1998). "The upshot of § 2680(a) is that when the United States' performance of a 'function or duty' involves discretion, the fact that the discretion was misused or abused in any way does not lead to liability[.]" *Shivers v. United States*, 1 F.4th 924, 928 (11th Cir. 2021).

The Supreme Court has "enunciated a two-part test for determining whether the discretionary function exception bars suit . . . in a given case." *Cohen v. United States*, 151 F.3d 1338, 1341 (11th Cir. 1998). First, the Court considers "the nature of the conduct and determine[s] whether it involves an element of judgment or choice." *Id.* (quoting *United States v. Gaubert*, 499

U.S. 315, 322 (1991) (internal quotations omitted)). "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Id.* (internal quotations omitted). "Second, if the conduct at issue involves the exercise of judgment, [the Court] must determine whether that judgment is grounded in considerations of public policy." *Id.* (internal quotations omitted).

The Court cites that the exception's purpose is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323. The Court does not focus on "the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting." *Cohen*, 151 F.3d at 1341. Rather, the focus is on the "nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* (quoting *Gaubert*, 499 U.S. at 325).

### IV. Legal Analysis

Ms. Alvarez's Complaint states a claim for relief alleging negligence—that the Defendant owed her a duty of care while incarcerated as an inmate, that Defendant breached that duty by not taking proper precautions, that the breach of that duty created the conditions for her sexual assault, and that she suffered damages. More specifically, Ms. Alvarez alleges that the United States breached its duty to her by "negligently recruiting, hiring, training and supervising Officer Seaman despite knowledge of his past misconduct, violating provisions of Prison Rape Elimination Act and the Program Rules designed to keep [Ms. Alvarez] free from sexual abuse, and maintaining a culture of sexual abuse where prison official misconduct is tolerated while complaints are silenced." [D.E. 11 at 4].

7

The crux of the United States' argument is that each of Ms. Alvarez's claims of negligence is barred by the discretionary function exception to the Federal Tort Claims Act and otherwise fails to allege any "independent negligence" within the scope of the Federal Tort Claims Act's waiver of sovereign immunity. Ms. Alvarez counters by leaning on a burden-shifting argument: that the burden of providing the applicability of the discretionary function exemption as an affirmative defense falls upon the Defendant. In her view, the Court should follow the Sixth, Seventh, and Ninth Circuits in ruling that "the [government] bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity." *Prescott v. United States*, 973 F.2d 696 (9th Cir. 1992).

Because "[v]irtually every act of a government employee, even the most ministerial action by the lowest-level employee, involves some judgment or choice," it is important that the Court not interpret the discretionary function exception in a manner that would "immunize *every* governmental act." *Sexton v. United States*, 132 F. Supp. 2d 967, 972 (M.D. Fla. 2000) (emphasis added). Thus, "the courts must exercise restraint in insulating the government from nearly all tort liability, because to do so would frustrate Congress' purpose in enacting the FTCA." *Id.* (citing *Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000)). This Court agrees with the Second Circuit's analysis that the ambiguous text of the discretionary function exception could lead to "absurd results" in favor of the government, as exhibited by the following example. *Coulthurst*, 214 F.3d at 110.

> For example, the driver of a mail truck undoubtedly exercises discretion in the manner of driving and makes innumerable judgment calls in the course of making his or her deliveries. In some manner of speaking, therefore, one might characterize it as an "abuse of discretion" for that driver to fail to step on the brake when a

8

pedestrian steps in front of the car, to fail to signal before turning, or to drive 80 miles per hour[] in a 35 mile per hour zone. Such a characterization, however, would effectively shield almost all government negligence from suit, because almost every act involves some modicum of discretion regarding the manner in which one carries it out. Such a result is not required by the language of the [discretionary function exception] and would undercut the policy aims at the heart of the [Federal Tort Claims Act].

*Id.*

Here, the Defendant contends that it is insulated from liability because employment and termination choices are discretionary. However, Congress established the Prison Rape Elimination Act of 2003 as a mechanism to "develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape" and "increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape." 117 U.S.C. § 972 (2003). "Jail administrators are not permitted to 'bury their heads in the sand' and ignore . . . obvious risks to the inmate populations they have an affirmative duty to protect." *Rivera v. Bonner*, 952 F.3d 560, 569 (5th Cir. 2017) (quoting *Walton v. Dawson*, 752 F.3d 1109, 1119 (8th Cir. 2014)). This Court agrees with the Fifth Circuit that "jail officials who provide '*no* training' on sexual abuse and leave their employees 'virtually unsupervised' are deliberately indifferent to the substantial risk that jailers might abuse detainees." *Id.* (quoting *Drake v. City of Haltom City*, 106 F. App'x 897, 900 (5th Cir. 2004).

In this case, Ms. Alvarez alleges that the prison officers lacked proper training and were not properly supervised or disciplined. Further, she alleges that the officers were provided unrestricted and unsupervised access to her—despite previous complaints of sexual misconduct.

The Defendant cannot avoid liability by arguing that the correctional officers' conduct had an "element of judgment or choice" so as to render Defendant immune. Ms. Alvarez's factual allegations about the United States' systematic and willful ignorance of basic safety standards demonstrates the possibility for direct liability under the Federal Tort Claims Act.

Additionally, under the two-part test to determine whether challenged conduct by a government employee falls within the discretionary function exception, the relevant inquiry is "whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997) (internal quotations omitted) (quoting *Powers v. United States*, 996 F.2d 1121, 1125 (11th Cir. 1997)). Correctional officers are expressly not permitted to engage in sexual activity with inmates. *See* 18 U.S.C. 2243(b). "Whoever . . . knowingly engages in a sexual act with another person who is in official detention[] and under the custodial, supervisory, or disciplinary authority of the person so engaging; or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both." *Id.* In other words, despite the Defendant's attempt to argue that the corrections authorities may rely on their discretionary powers to determine how to supervise the inmates of the corrections facility, they are not authorized to use discretion in permitting sexual acts against inmates. Hence, such conduct does not involve "judgment or choice" under the meaning of the statute "because the employee has no rightful option but to adhere to the directive" to not engage in sexual acts with inmates. *Cohen*, 151 F.3d at 1341.

Therefore, the Court rejects this broad interpretation of the discretionary function exception, as virtually all government positions require some sort of discretion in performing. Thus, the discretionary function exception does not apply, and the Motion to Dismiss on the basis of the application of this exception is denied.

THE COURT has considered the motion, the response in opposition, the reply, pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is DENIED. Further, it is

**ADJUDGED** that an Answer is required by **September 30, 2024**.

DONE AND ORDERED in Chambers at Miami, Florida, this 28th of August 2024.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record